This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr., along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 13 March 2000 as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Insurance Company of the State of Pennsylvania is the carrier on risk.
4. Plaintiff's average weekly wage was $431.20.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
6. Industrial Commission filings were stipulated into evidence as Stipulated Exhibit 2.
7. The issues before the undersigned are: (i) whether plaintiff suffers a compensable occupational disease that is casually related to her employment with defendant-employer; and (ii) if so, what compensation if any, is plaintiff entitled?
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was sixty-two years old. Plaintiff had worked for defendant-employer for twenty years.
2. Defendant-employer is a series of warehouse buildings that serves as a storage depot for items that are received from product manufactures and then distributed to various Eckerd Stores for sale throughout the United States. Many areas of these facilities are grimy and filled with various types of dust.
3. Plaintiff's duties included stacking merchandise on pallets, shrink wrapping and labeling merchandise, driving a forklift, and pulling merchandise from the racks onto pallets.
4. Plaintiff began having respiratory problems in the 1980s.
5. William Long, M.D. treated plaintiff for rhinitis, a condition most people relate to as having a runny nose and watery eyes during high pollen counts in the springtime.
6. In 1993 Dr. Long diagnosed plaintiff with asthma, which is inflammation of the airways. This inflammation causes airways to narrow which makes it hard for the patient to breathe.
7. Between 1993 and 1999, plaintiff was diagnosed on several occasions with asthmatic bronchitis, bronchospasms, and sinusitis. Plaintiff was treated with an albuterol inhaler, a cortisone inhaler, and oral medication to help her with her breathing, and occasional steroid injections.
8. Plaintiff denoted that her asthma was becoming increasingly worse when she was coming in contact with dust at her work. At times, she wore a mask over her mouth and nose because of the dust. She noticed that her asthma became worse around cats, tree pollen, mildew, strong colognes, flowers, and heat.
9. Defendant-employer issued masks to warehouse workers to protect them from breathing dust and workers wore aprons to protect their clothes.
10. Following work, plaintiff often had to wash dirt and grime from her body.
11. Plaintiff stopped working for defendant-employer on June 1, 1998 because she was unable to continue to deal with the levels of dust at the workplace.
12. Dr. Long has determined the dusty environment in which plaintiff worked did worsen or aggravate plaintiff's asthma to the point that she was disabled on June 8, 1998.
13. Dr. Long indicated plaintiff's work in a dusty warehouse exposed plaintiff to a higher risk than the general public of developing her asthmatic condition to a point of disability.
14. Plaintiff's continual exposure to dust and grime while employed by the defendant-employer caused a permanent aggravation of her pre-existing asthmatic condition.
15. Plaintiff's asthmatic condition was substantially aggravated by conditions relating to the work place and was a significant causal factor in development of her disabling condition.
16. As result of plaintiff's development of an occupational disease, asthma, plaintiff has been unable to earn any wages after June 1, 1998.
17. Plaintiff's working in defendant-employer's warehouse exposed her to a greater risk of aggravating her asthmatic condition than the general public not equally exposed.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The conditions of plaintiff's workplace substantially aggravated plaintiff's asthmatic condition. The conditions of defendant-employer's workplace caused plaintiff's disability. Wilkens v. J. P. Stevens Co.,333 N.C. 449, 453, 426 S.E.2d 675, 679 (1993).
2. The development of plaintiff's disabling asthma was due to causes and conditions characteristic of and peculiar to plaintiff's employment with defendant-employer and is not an ordinary disease of life to which the general public not so employed is equally exposed and is, therefore, an occupational disease. N.C.G.S. § 97-53(13).
3. As result of the disability related to plaintiff's compensable occupational disease condition, plaintiff is entitled to total disability compensation from June 1, 1998 until further order from this Commission. N.C.G.S. § 97-29.
4. Plaintiff is entitled to receive medical treatment for her compensable occupational disease that would effectuate a cure, lessen plaintiff's period of disability, or relieve plaintiff's pain. N.C.G.S. § 97-25.
5. William Long, M.D., plaintiff's treating physician, may continue to treat plaintiff's occupational disease. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For her compensable contraction of an occupational disease, defendants shall pay total disability compensation at a rate of $278.48 per week from June 1, 1998 and continuing until further order from this Commission. Said compensation is subject to the attorney's fee approved in Paragraph 3.
2. Defendants shall pay all medical expenses accrued by plaintiff as a result of her compensable occupational disease.
3. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of the sum due plaintiff under Paragraph 1 which has accrued to date may be deducted from that compensation and paid directly to plaintiff's counsel. In the future, plaintiff's counsel is entitled to receive every fourth payment. That amount shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER